# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOE TAVERAS,<br>  *Plaintiff*,<br><br>  v.<br><br>SCOTT SEMPLE, ET AL.,<br>  *Defendants.* | No. 3:15-cv-531 (VAB) |

## RULING AND ORDER ON DEFENDANTS' MOTION FOR RELIEF FROM DISCOVERY ORDER AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Noe Taveras ("Plaintiff"), then incarcerated at Garner Correctional Institution ("Garner") in Newtown, Connecticut, filed a Complaint *pro se* against Scott Semple ("Commissioner Semple"), Commissioner for the Connecticut Department of Corrections ("DOC"); Bona ("Captain Bona"), DOC Captain and Unit Manager at Garner; Nancy B. ("CSW Nancy"), DOC certified social worker and mental health worker at Garner; Dr. Gebeno, DOC Chief of Psychiatry and physician at Garner; and Dr. Castro, DOC Chief of Medicine (collectively, "Defendants"). Compl., ECF No. 1 (Apr. 10, 2015). Mr. Taveras alleges, under 42 U.S.C. § 1983, deliberate indifference to his medical needs in violation of his Eighth Amendment rights under the United States Constitution. *Id.*

On October 17, 2017, the Court appointed *pro bono* counsel for Mr. Taveras for purposes of facilitating discovery only. Order, ECF No. 36 (Oct. 17, 2017) ("Order Appointing Counsel").

Defendants have now moved for relief from the Court's most recent discovery order, Mot. for Relief from Disc. Order, ECF No. 86 (Feb. 3, 2020) ("Defs.' Mot. for Disc. Relief").

1

Additionally, Mr. Taveras has moved, *pro se*, for a preliminary injunction. Mot. for Prelim. Inj., ECF No. 83 (Jan. 29, 2020) ("Pl.'s Mot. for Prelim. Inj.").[1]

For the following reasons, Plaintiff's motion for preliminary injunction is **DENIED,** and Defendants' motion for relief from the discovery order is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual allegations underlying this case. *See* Initial Review Order, ECF No. 7 (Apr. 22, 2015).

In brief, Mr. Taveras's claims arise from an alleged incident at Garner on October 22, 2013, after he cut his arm during a "mental health crisis" and correctional staff placed him in restrictive housing. *Id.* at 2. Mr. Taveras alleges that Commissioner Semple, Captain Bona, Dr. Gebeno, and CSW Nancy deprived him of mental health treatment, despite their knowledge of a risk to his health or safety. *Id.* at 3–4. Dr. Castro allegedly disregarded a prescription ordered for Mr. Taveras by "emergency room doctors." *Id.* at 5.

On April 10, 2015, Mr. Taveras filed this suit *pro se*. Compl.

On April 22, 2015, the Court issued an initial review order permitting his Eighth Amendment claims to proceed. Initial Review Order.

On August 26, 2016, nearly a year after entering appearance, *see* Notice of Appearance, ECF No. 19 (Sept. 15, 2015), Defendants filed an Answer with affirmative defenses to the Complaint, Answer, ECF No. 20 (Aug. 26, 2016).

For the next year, the parties engaged in discovery, during which time both Plaintiff and Defendants filed numerous requests with the Court to facilitate discovery. *See* ECF Nos. 21–30.

---

[1] Mr. Taveras filed two motions for preliminary injunction, ECF Nos. 82 and 83, which appear to be identical except that the motion at ECF No. 83 corrects a page which was scanned upside down in the motion at ECF No. 82. The Court will cite to ECF No. 83 for clarity.

2

On September 1, 2017, Mr. Taveras filed a motion to appoint a guardian ad litem. Mot. to Appoint Counsel, ECF No. 31 (Sept. 1, 2017). Defendants objected. Obj. to Mot. to Appoint Counsel, ECF No. 32 (Sept. 8, 2017).

On September 25, 2017, the Court granted Mr. Taveras's motion to appoint counsel "for the purposes of facilitating discovery," Order Granting Mot. to Appoint Counsel, ECF No. 35 (Sept. 25, 2017); and on October 17, 2017, the Court appointed *pro bono* counsel for Mr. Taveras "for discovery purposes ONLY," Order Appointing Counsel.

On November 14 and 21, 2017, two attorneys entered their appearance on behalf of Mr. Taveras. Notice of Appearance, ECF No. 37 (Nov. 14, 2017); Notice of Appearance, ECF No. 38 (Nov. 21, 2017).

On November 29, 2017, Mr. Taveras moved, through his recently appointed counsel, for an extension of the discovery deadline until March 29, 2018. The Court granted this extension the next day. Order Granting Mot. for Ext. of Time, ECF No. 40 (Nov. 30, 2017).

On March 27, 2018, Mr. Taveras moved for a second extension of the discovery deadline, this time until July 27, 2018. Second Mot. for Ext. of Time, ECF No. 41 (Mar. 27, 2018). The Court granted this motion on May 22, 2018. Order, ECF No. 43 (May 22, 2018).

On May 15, 2018, the parties filed a joint motion, dated April 16, 2018, for a protective order. Joint Mot. for Protective Order, ECF No. 42 (May 15, 2018). The motion stated that Defendants had "agreed to produce all DVD[]s from the alleged incident(s), but raise[d] concerns with respect to the unauthorized dissemination of the DVD[]s in light of the safety and security interests of the [DOC]." *Id.*

The Court granted this motion and adopted the parties' proposed protective order on May 22, 2018. Order, ECF No. 48 (May 22, 2018). The order governed and limited disclosure of "all

3

information provided by [DOC] staff and/or which stems from the provision of information from [DOC] to [P]laintiff's counsel with regard to any and all DVD recording cameras at any State Correctional Institutions . . . ." Protective Order, ECF No. 42 (May 15, 2018).

Over the next year, Mr. Taveras moved three more times for extension of the discovery deadline, each time representing that "Defendants have indicated that additional discovery will be disclosed, which additional discovery will require additional review and analysis by the undersigned," and that "the parties are scheduling numerous depositions in order to prepare the case for trial." Third Mot. for Ext. of Time, ECF No. 49 (July 27, 2018); Fourth Mot. for Ext. of Time, ECF No. 53 (Nov. 21, 2018); Fifth Mot. for Ext. of Time, ECF No. 56 (Mar. 21, 2019).

The Court granted each of these motions for extension of the discovery deadline. Order, ECF No. 50 (July 30, 2018); Order, ECF No. 54 (Nov. 26, 2018); Order, ECF No. 57 (Mar. 27, 2019). The Court also suspended pre-trial deadlines until the completion of discovery. Order, ECF No. 51 (Aug. 1, 2018).

On July 17, 2019, Mr. Taveras moved through counsel for a sixth extension of the discovery deadline, representing that:

> the Plaintiff was recently transferred from MacDougall-Walker Correctional Institution to Garner [], and that Plaintiff has informed the undersigned that he has not been able to complete his review of certain videography discovery disclosed by the Defendants. Specifically, the Defendants disclosed certain DVD's that contain crucial videographic evidence that the Plaintiff needs to review, but Plaintiff has represented to the undersigned that he has not been able to review the DVD's despite his repeated requests for the same.

Sixth Mot. for Ext. of Time, ECF No. 62 (July 17, 2019). Plaintiff's counsel further represented that counsel for defendants indicated "that efforts would be taken so as to permit the Plaintiff with reasonable opportunity to review the DVD[]s." *Id.*

On July 18, 2019, the Court granted Plaintiff's sixth motion for extension of time until October 4, 2019, and stated that "the Court is not likely to grant further extensions of discovery in this 2015 case." Order, ECF No. 63 (July 18, 2019).

On the same day, the Court ordered "the State of Connecticut to make available to Plaintiff (1) the video recordings disclosed to Plaintiff, and (2) the means to view those recordings, by August 30, 2019." Order, ECF No. 64 (July 18, 2019). The Court further stated that if Mr. Taveras, "through no fault of his own, has not viewed the videos by August 30, 2019, the Court will entertain a motion for Rule 37 sanctions." *Id.*

On September 3, 2019, Mr. Taveras moved for sanctions against Defendants for their failure to comply with the Court's order to provide him with video recordings by August 30, 2019. Pl.'s Mot. for Sanctions, ECF No. 66 (Sept. 3, 2019). Mr. Taveras asserted that counsel had received approximately twenty-eight DVDs which contained footage from the alleged incident at issue in this case, and that Mr. Taveras had attempted to view all of the DVDs over the course of a year and a half. *Id.* But, "due to no fault of his own," Mr. Taveras asserted that he "ha[d] been unable to view and analyze" those DVDs. *Id.* In his view, he and his counsel were "unable to adequately prepare for, let alone take any deposition until such a time when the Plaintiff has had an opportunity to view and analyze the DVD[]s disclosed in April of 2018." *Id.*

On September 11, 2019, Defendants filed an objection to Mr. Taveras's motion for sanctions, arguing that Mr. Taveras had not provided "an accurate portrayal of the efforts, or progress, made in [P]laintiff's viewing of the eleven DVD[]s he has sought to review." Defs.' Obj. to Sanctions at 1, ECF No. 67 (Sept. 11, 2019). They attached an affidavit of a DOC Correctional Treatment Officer, Ex. A—Rembish Aff., ECF No. 67 (Sept. 11, 2019) ("Rembish

5

Aff."); and a signature log of Mr. Taveras's viewings of the DVDs, Ex. B—Viewing Log, ECF No. 67-2 (Sept. 11, 2019) ("Taveras DVD Viewing Signature Log").

Defendants assert that Mr. Taveras "has viewed five of the eleven DVD[]s that were provided for his viewing. . . . despite initially challenging technical difficulties with the available equipment not being able to play the DVD[]s, and on[]going behavioral issues of the [P]laintiff[.]" Defs.' Obj. to Sanctions at 1. Defendants assert further that they have provided Mr. Taveras time to view the DVDs "numerous times," but "due to his procrastination [or] distraction, he was unable to view the entire DVD before the allotted time to do so ended, or his time to do so was cut short because of his behavior." *Id.* at 1–2.

They state that "at least once, [Mr. Taveras's] behavior resulted in him being transferred out of the unit to mental health, and later to Garner [ ] before he was returned to MacDougall [ ] where he was again able to review the DVD[]s." *Id.* at 2. In Defendants' view, correctional staff "have been undertaking extraordinary efforts to accommodate [Mr. Taveras] so that he has opportunities to view the DVD[]s." *Id.* But, while "they are often successful," Mr. Taveras "will not acknowledge viewing a DVD until he has watched it to his satisfaction, often several times," and the signature page reflects "just the number [of viewings] seen to his satisfaction," so "the signature page does not accurately reflect the number of viewings." *Id.* Therefore, Defendants argue, the inability to meet the Court's deadline for Plaintiff to view the DVDs "was not due to a failure of effort on behalf of the defendants, but due at least in part to actions of the plaintiff," and therefore does not warrant sanctions. *Id.*

On September 13, 2019, Mr. Taveras replied to Defendants' objection to his motion for sanctions, "disputing the contention that his inability to view any of the subject DVD[]s was of any fault of his own." Reply, ECF No. 68 (Sept. 13, 2019). He submitted what he alleges to be a

6

recreation from his own memory of the internal log he allegedly kept documenting each time he requested to view the DVDs, asserting that his original contemporaneous log had been confiscated. *Id.* at 1–2, 5–6 ("Pl.'s Recreated Log"). He also disputed Defendants' contention that there were only eleven DVDs, as his counsel's records indicate that twenty-eight DVDs were sent to Plaintiff for his review. *Id.* at 2.

On October 16, 2019, the Court held a telephonic status conference, during which the Court reset the discovery deadline for January 11, 2020, and ordered monthly status calls to be held in the meantime. Minute Entry, ECF No. 69 (Oct. 16, 2019). The Court also denied Mr. Taveras's motion for sanctions without prejudice. Order Denying Mot. for Sanctions, ECF No. 71 (Oct. 17, 2019).

On November 14, 2019, the Court held a monthly status call, after which the Court entered the following:

> Because there is a continuing issue as to Mr. Taveras's ability to view potentially relevant DVDs, the parties were urged to continue working to resolve the issue in advance of the next telephonic status conference . . . . If parties cannot resolve the issue, the Court will decide what further action, if any, is required at that time.

Minute Entry, ECF No. 73 (Nov. 14, 2019).

On January 7, 2020, the Court held a rescheduled monthly status call. Minute Entry, ECF No. 79 (Jan. 7, 2020). Following the call, the Court "order[ed] the [DOC], as represented by the Defendants, to do all they can to resolve the issues regarding Mr. Taveras's ability to view the potentially relevant DVDs by January 24, 2020," and "order[ed] the Defendants to deliver the DVDs to Mr. Taveras's counsel by January 24, 2020." Order, ECF No. 80 (Jan. 9, 2020).

The Court stated further that if Mr. Taveras had not been able to view the DVDs by a status conference scheduled for February 4, 2020, and Defendants still contended that Mr.

7

Taveras was refusing DOC efforts to permit him to view the DVDs, "Defendants should be prepared to present signed affidavits from individuals within the DOC attesting to the efforts made to enable Mr. Taveras to view the DVDs." *Id.* The Court also "reserve[d] the ability to allow an adverse inference against Defendants at trial if Mr. Taveras continues to be unable to view the DVDs due to the DOC's inadequate efforts or to defective technology." *Id.* The Court also extended the deadline for discovery again to February 14, 2020. *Id.*

On January 27, 2020, Mr. Taveras moved *pro se* for a preliminary injunction to "cease and desis[t] retaliatory punishment from correctional employees" at Garner. Pl.'s Mot. for Prelim. Inj. Defendants objected. Defs.' Obj. to Prelim. Inj., ECF No. 85 (Jan. 30, 2020); Ex. A to Defs.' Obj. to Prelim. Inj., ECF No. 85-1 (Jan. 30, 2020) ("Taveras Transfer Log").

On January 30, 2020, the Court denied the motion for preliminary injunction "without prejudice to Plaintiff renewing through Counsel." Order, ECF No. 84 (Jan. 30, 2020).

On February 3, 2020, Defendants moved for relief from the Court's order permitting Plaintiff's viewing of DVDs. Defs.' Mot. for Disc. Relief. Defendants contend that Mr. Taveras's "viewing of the DVD[]s and color photographs of his past incidents of self-harm . . . is triggering him into continued acts of self-harm," creating a danger to his safety and mental health as well as the mental health of others in his unit. *Id.* at 1. Defendants attached a declaration from Kathryn Carhart, supervising psychologist for the DOC and clinical psychologist at Garner, in support of their motion. Ex. A—Carhart Aff., ECF No. 86-1 (Feb. 3, 2020) ("Carhart Aff.").

Following a telephonic status conference on February 4, 2020, the Court directed Plaintiff to respond to Defendants' motion for relief from the discovery order and suspended remaining deadlines. Order, ECF No. 88 (Feb. 5, 2020). The Court also stated that it would *sua sponte*

reconsider Mr. Taveras's motion for preliminary injunction, *id.*, without requiring Mr. Taveras to file the motion through counsel, who was appointed only for purposes of facilitating discovery.

On February 25, 2020, Mr. Taveras filed his objection to Defendants' motion for relief from the discovery order. Pl.'s Obj. to Mot. for Disc. Relief, ECF No. 89 (Feb. 25, 2020).

## II.     STANDARD OF REVIEW

### A.     Motion for Preliminary Injunction

Preliminary injunctive relief "is an extraordinary and drastic remedy [ ] that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To show entitlement to a preliminary injunction, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also N.Y. Prog. & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) ("'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008))).

To demonstrate irreparable harm, plaintiff must show an "injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citations and internal quotation marks omitted); *see also City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983) (injunctive relief cannot be provided if claimed injury is speculative or remote).

### B. Motion for Relief from Discovery Order

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). Indeed, "[a] trial court enjoys wide discretion in its handling of pre-trial discovery. . . ." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992); *see In Re Agent Orange Product Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (the district court has "wide latitude to determine the scope of discovery"); *Gen. Houses v. Marloch Mfg. Corp.*, 239 F.2d 510, 514 (2d Cir. 1956) ("The order of examination is at the discretion of the trial judge . . . ."); *Mirra v. Jordan*, No. 13-CV-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the [district] court's sound discretion.").

Under Rule 26 of the Federal Rules of Civil Procedure, a "court may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects, as required 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,'" and "may also set the timing and sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) (quoting Fed. R. Civ. P. 26(c)–(d)); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). Upon a showing of good cause, "[a] party from whom discovery is sought[] may seek a protective order to shield itself from 'annoyance, . . . undue burden[,] or expense,'" *United Illuminating Co. v. Whiting-Turner Contracting Co.*, No. 3:18-cv-327 (WWE), 2019 WL 4926402, at *4 (D. Conn. Oct. 7, 2019) (quoting Fed. R. Civ. P. 26(c)(1)) (citing *In re Agent Orange Prod. Liab.*

10

*Litig.*, 821 F.2d 139, 145 (2d Cir. 1987)). "'Where the discovery is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause.'" *Mahon v. Chicago Title Ins. Co.*, No. 3:09-cv-00690 (AWT), 2017 WL 3331738, at *1 (D. Conn. Aug. 4, 2017) (quoting *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)).

## III.     DISCUSSION

### A.     Motion for Preliminary Injunction

Mr. Taveras requests a preliminary injunction to "cease and desis[t] retaliatory punishment from correctional employees" at Garner. Mot. for Prelim Inj. ¶ 1. He alleges being threatened by a mental health worker and therefore requests "an immediate restraining order from her." *Id.* ¶ 2. He also alleges being denied mental health treatment on January 1, 2020, after experiencing "a mental health crisis," allegedly because there was not sufficient staff that day. *Id.* ¶ 5. He alleges that he "felt vulnerable" and that this denial led to suicide attempts. *Id.*

Defendants argue that Mr. Taveras's motion should be denied because injunctive relief "cannot be awarded against nonparties," because the relief is not "relate[d] to the underlying claims," and because the Court "should not micro-manage prison administration." *Id.*

The Court agrees.[2]

"[A] court generally may not issue an order against a nonparty." *Sumpter v. Skiff*, 260 F. App'x 350, 350–51 (2d Cir. 2008); *see also United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988) (summary order) (affirming district court denial of injunctive relief against an entity not

---

[2] "Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases." *Jarecke v. Hensley*, 552 F. Supp. 2d 261, 264 (D. Conn. 2008) (citing *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997)); *see also Abrams v. Waters*, No. 3:17-cv-1659 (CSH), 2018 WL 1469057, at *4 (D. Conn. Mar. 26, 2018) (determining that oral testimony and argument was not necessary to resolve a prisoner's motion for preliminary injunction requesting a change in prison conditions); *Anderson v. Williams*, No. 3:15-cv-1364 (VAB), 2016 WL 7217588, at *1 (D. Conn. Dec. 13, 2016) ("A district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when 'essential facts are not in dispute.'" (quoting *Md. Cas. Co.*, 107 F.3d at 984)). As essential facts are not in dispute here, no hearing is necessary to rule on the motion for preliminary injunction.

named as a defendant). Moreover, the purpose of a preliminary injunction is to provide temporary relief pending resolution of a case on the merits, *Pierce v. Woldenberg*, 498 F. App'x 96, 98 (2d Cir. 2012) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 645 (2d Cir. 1998) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.")), not to provide relief unrelated to the merits of a case.

Mr. Taveras seeks relief from the alleged actions of a mental health worker, who is not a defendant in this case, and who had no connection to the Eighth Amendment claims arising from the October 22, 2013 incident. *See Doe v. Paychex, Inc.*, No. 3:17-cv-2031 (VAB), 2020 WL 219377, at *7 (D. Conn. Jan. 15, 2020) (denying plaintiff's motion for preliminary injunction where "[t]he sweeping relief [she] seeks is unconnected to" her claims).

Just as importantly, Mr. Taveras is no longer at the same facility as this particular mental health worker. Defs.' Obj. to Prelim. Inj. at 1; Taveras Transfer Log. As a result, his claim for preliminary relief also is moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (recognizing that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility"). To the extent that Mr. Taveras is seeking relief in the event he is returned to Garner, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with" the purpose of "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Accordingly, Mr. Taveras's motion for a preliminary injunction will be denied.

### B. Motion for Relief from Discovery Order

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The proportionality determination limits the scope of discovery by 'considering the importance of the issues at stake[,]' the 'amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense . . . outweighs the likely benefit' of the discovery sought." *Ceraldi v. Strumpf*, No. 3:17-cv-1628 (JCH), 2019 WL 5558472, at *1 (D. Conn. Oct. 29, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

> A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.

*In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005). *See, e.g.*, *McAnneny v. Smith & Nephew, Inc.*, No. 3:17-cv-00012 (AWT), 2018 WL 1383400, at *6 (D. Conn. Mar. 19, 2018) (finding that, "due to the broad scope and questionable relevance of" an interrogatory "seek[ing] information related to *any* instance where *either* device failed or produced an unintended result, rather than instances where the devices failed in a manner similar to that alleged in this case," the interrogatory "is not proportional to the needs of this litigation" (emphasis in the original)); *Harnage v. S. Barrone*, No. 3:15-cv-01035 (AWT), 2017 WL 3448543, at *16 (D. Conn. Aug. 11, 2017) (finding that a request for "[a]ny and all photographs, films or videotapes of any defendant, or other participants in, or other witness to any of the events which are the subject of this lawsuit or any of the said events themselves or of the scene

of any such events[]" was overly broad and unduly burdensome based in part on defendants' contention that the request "could implicate security concerns" (internal citation and quotation marks omitted)).

"'A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.'" *Williams v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-cv-673 (RNC), 2016 WL 4083598, at *4 (D. Conn. Feb. 16, 2016) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment). In the end, "'[t]he court's responsibility, using all the information provided by the parties, is to consider these and all other factors in reaching a case-specific determination of the appropriate scope of discovery.'" *Id.* (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment); *see also Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 558 (D. Conn. 2006) ("The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled.").

Defendants request relief from the discovery order requiring the DOC to enable Mr. Taveras to view the DVDs allegedly containing footage related to the October 2013 incident from which this case arises. Defs.' Mot. for Disc. Relief at 1. Based on the opinion of Dr. Kathryn Carhart, a supervising psychologist for the DOC, they argue "that Mr. Taveras'[s] possession of photographs and viewing of DVD[]s of his past self-harming injuries is severely detrimental to his mental health and his safety, as this can trigger further acts of self-harming by cutting." *Id.* (citing Carhart Aff. ¶ 7).

14

For example, Defendants note that "on December 23, 2019, Mr. Taveras reviewed DVD[]s of past events when he self- harmed by cutting himself." *Id.* at 2 (citing Carhart Aff. ¶ 8). On January 1, 2020, "Mr. Taveras engaged in a self-harming act in which he cut himself, which required medical and mental health intervention," which Dr. Carhart and her clinical team believed was triggered by Mr. Taveras's viewing of the DVD[]s on December 23, 2019. *Id.* (citing Carhart Aff. ¶¶ 9–12). On January 15, 2020, he engaged in another self-harming act of cutting himself," one day after he was provided with "access to view the DVDs of his past self-harming incidents." *Id.* at 3 (citing Carhart Aff. ¶¶ 8–9).

Defendants state that "it is Dr. Carhart's professional opinion that Mr. Taveras should not be permitted to continued access to photographs or videos of his past cuttings and injuries, because it is harmful for his mental health and his physical safety[,]" and because his possession of photographs and discussion with other inmates of viewing the DVDs "has a negative impact on their mental health care and treatment, as they may be triggered as well." *Id.* (citing Carhart Aff. ¶¶ 7, 10, 12–18).

In Defendants' view, the Court's order to provide Mr. Taveras with opportunities to view the DVDs and photographs at issue here place them "in a Catch-22":

> [I]f [Defendants] ignore the Order out of concern for his mental and physical safety, they risk sanctions and an adverse inference; yet if they comply, and he is triggered and harms himself after viewing the DVD[]s and/or photographs, then they and new individuals will be subject to new claims of deliberate indifference to his mental health and safety, the very claims that underlie his Complaint: that the [D]efendants were aware of his propensity to self-harm by cutting, yet were deliberately indifferent to that danger by not taking steps to stop it, and as a result he harmed himself.

*Id.* at 4.

Mr. Taveras disputes several of the representations in Dr. Carhart's affidavit and argues that "Defendants are, in essence, attempting to withhold and/or otherwise deprive the Plaintiff of his constitutional right to review and analyze probative, material, and/or otherwise key evidence . . . ." Pl.'s Obj. to Mot. for Disc. Relief at 1. He "takes exception" to Defendants' argument that viewing the evidence presents a danger to the Plaintiff, because he "has suffered numerous mental health crisis resulting in self-harm well before he had access to any of the" photographic or video evidence, and "[i]ndeed, it is the Defendants' purported failure(s) to adequately treat the Plaintiff from a prior instance of mental health crisis that forms the center of this very lawsuit." *Id.* at 2. Mr. Taveras argues further that the DVDs contain probative, material evidence, and that preventing him from viewing the DVDs and photographs "would deprive the Plaintiff of his ability to adequately prosecute his case, in dereliction of his constitutional right to due process." *Id.*

Mr. Taveras argues in the alternative that he must have the right to challenge the sworn statements of Dr. Carhart and "moves this Court to order [ ] Defendants to organize, facilitate, and/or otherwise pay for an independent medical examination of the Plaintiff, to be conducted by a medical professional who is not affiliated with either the State of Connecticut or Department of Corrections." *Id.* Mr. Taveras also requests a hearing during which he may cross examine Dr. Carhart's sworn statements. *Id.*

The Court disagrees.

At this stage, under the applicable proportionality standard, and upon the good cause shown by the harms articulated by Defendants as detailed in Dr. Carhart's affidavit, Mr. Taveras must make more of a showing in order to be entitled to view additional DVDs. *See, e.g.*, *Williams*, 2016 WL 4083598, at *4 (granting protective order against depositions of two

witnesses because, plaintiff "ha[d] not made a specific proffer of the testimony he seeks to obtain from [the witnesses] or how the testimony would be used to resolve the issues in this case," and because the "cost of preparing for and taking these depositions is disproportionate to the needs of the case and plaintiff's potential recovery"). The Court has given Mr. Taveras a considerable amount of time for DVD viewing and Mr. Taveras has been able to view several DVDs. As a result, based on the DVDs already viewed, Mr. Taveras must show more specifically how the DVDs already viewed and any DVDs not already viewed are probative of his Eighth Amendment claim regarding a single October 22, 2013 incident. But so far, he has not done so.

Accordingly, Defendants' motion for relief from the discovery order will be granted.[3]

## IV. CONCLUSION

For the reasons explained above, Plaintiff's motion for preliminary injunction is **DENIED** and Defendants' motion for relief from the discovery order is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of June, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

---

[3] This ruling obviously does not preclude Mr. Taveras's current counsel for discovery purposes from reviewing additional DVDs and consulting with Mr. Taveras regarding their probative value to his case. Nor does this ruling preclude the possibility that the necessary showing could be made for Mr. Taveras to view additional DVDs himself. On this case's current record, however, there is nothing to suggest such a showing could be made, given the proportionality concerns raised by the Defendants and the age of this case: five years after its filing, discovery has yet to conclude. *See Dietz*, 136 S. Ct. at 1892 ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").