UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
NOE TAVERAS                   :    Civil No. 3:15CV00531(SALM)
                              :
v.                            :
                              :
SCOTT SEMPLE, BONA, NANCY B., :
GEBENO, and CASTRO            :    January 5, 2023
                              :
------------------------------X
```

<u>**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #148]**</u>

Plaintiff Noe Taveras ("plaintiff" or "Taveras"), a sentenced inmate,[1] brings this action relating to events occurring during his incarceration in the custody of the Connecticut Department of Correction ("DOC") at Garner Correctional Institution ("Garner"). Taveras originally filed this action as a self-represented plaintiff. <u>See</u> Doc. #1. After initial review, five defendants remain: former Commissioner, then-Warden Scott Semple ("Semple"); Captain Bona, "CSW" Nancy

---

[1] The Court may take judicial notice of matters of public record. <u>See, e.g.,</u> <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006); <u>United States v. Rivera</u>, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); <u>Ligon v. Doherty</u>, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that plaintiff is a sentenced inmate, currently held at Garner. <u>See</u> http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=3 68953 (last visited Jan. 4, 2023).

B., "chief of psychiatry" Dr. Gebeno, and "chief of medicine" Dr. Castro (collectively, "defendants"). Doc. #7 at 1 (sic).[2]

Defendants have filed a Motion for Summary Judgment. [Doc. #148]. Plaintiff, through counsel, has filed an objection and memorandum in opposition to defendants' motion. See Docs. #154, #155. For the reasons set forth below, defendants' Motion for Summary Judgment [**Doc. #148**] is **GRANTED, in part, and DENIED, in part.**

I.   **PROCEDURAL BACKGROUND**

Plaintiff brought this action as a self-represented party on April 10, 2015. See Doc. #1. On that same date, plaintiff filed a motion for leave to proceed in forma pauperis, see Doc. #2, which was granted. See Doc. #6. On April 22, 2015, Judge Victor A. Bolden conducted an initial review of the Verified Complaint. See Doc. #7. The Initial Review Order ("IRO") permitted an Eighth Amendment claim to proceed against defendants Semple, Captain Bona, Dr. Gebeno, and CSW Bertulis for deliberate indifference to plaintiff's "serious medical need for mental health treatment." Id. at 4. The IRO also permitted an Eighth Amendment deliberate indifference claim to proceed against Dr. Castro for refusing "to prescribe [plaintiff] pain

---

[2] Defendants identify "CSW Nancy B." as "Bertulis[.]" Doc. #148-10 at 1. The Court will hereinafter refer to this defendant as "CSW Bertulis."

medication from emergency room doctors after numerous suicide attempts by cutting." Id. at 5 (citation and quotation marks omitted).

On September 15, 2015, counsel for defendants filed an appearance in this matter. See Doc. #19. Nearly one year later, with no explanation for the delay, defendants filed an Answer to the Verified Complaint on August 26, 2016. See Doc. #20. Defendants assert, in relevant part, the following affirmative defenses: (1) "The plaintiff's complaint fails to state a claim upon which relief can be granted[;]" and (2) "The plaintiff did not fully exhaust his administrative remedies and therefore his claims are barred by the Prison Litigation Reform Act." Id. at 5.

For the next five years, plaintiff sought repeated extensions of the scheduling order largely for the purpose of completing discovery. See, e.g., Docs. #23, #39, #41, #49, #53, #56, #62. During this time, plaintiff was appointed pro bono counsel to assist in his discovery efforts. See Docs. #35, #36. Plaintiff has been represented by pro bono counsel Attorney Toya Graham since October 8, 2020, for trial purposes. See Docs. #99, #102, #104.

On October 15, 2021, this matter was transferred to the undersigned. See Doc. #114. Prior to the transfer, on October 12, 2021, Judge Bolden entered an Order requiring counsel to

file a status report by November 5, 2021, addressing "whether it will be feasible for discovery to close by January 14, 2022[,] and for dispositive motions to be filed by February 18, 2022." Doc. #113 (emphases removed). The parties were also to "report on whether they wish to be referred to a Magistrate Judge for a settlement conference." Id. On October 19, 2021, the undersigned scheduled a telephonic status conference for November 10, 2021, "to discuss the status of this case, including any information set forth in the status report that is due on November 5, 2021." Doc. #115.

The parties failed to file the status report on November 5, 2021. As a result, on November 6, 2021, the undersigned issued an Order to Show Cause "why sanctions should not issue for [counsel's] failure to file a joint status report in compliance with Judge Bolden's October 12, 2021, Order." Doc. #116. On November 8, 2021, counsel for defendant and counsel for plaintiff filed separate responses to the Order to Show Cause, along with a Joint Status Report. See Docs. #117, #118, #119. Plaintiff's counsel fell on the proverbial sword and claimed that the failure to comply with Judge Bolden's Order "was an inadvertent error[.]" Doc. #117 at 1. Defense counsel similarly represented that his failure to comply with the Order "was an inadvertent oversight[.]" Doc. #119 at 2. Following discussions with counsel during the November 10, 2021, telephonic status

4

conference, the Court set a dispositive motions deadline of January 28, 2022, with any responses to be filed by February 28, 2022. See Doc. #121.

Thereafter, the parties engaged in settlement efforts, and received two extensions of the dispositive motions deadline, one of which the Court issued sua sponte. See Docs. #131, #134. On March 8, 2022, defendants requested to extend the dispositive motions deadline by forty-seven days to accommodate a follow-up settlement conference scheduled for April 25, 2022. See Doc. #142 at 1. On March 9, 2022, the Court granted that motion "to permit the parties to continue settlement discussions[,]" and reset the dispositive motions deadline to May 16, 2022. Doc. #143.

On May 16, 2022, nearly seven years after this case was filed, defendants filed the motion for summary judgment now at issue. See Doc. #148. The motion asserts only two grounds for summary judgment, each of which could have been raised at a much earlier stage of this litigation. First, defendants assert that plaintiff failed to plead the correct date of the incident at the heart of this litigation. See id. at 1. Second, defendants assert that plaintiff failed to exhaust his administrative remedies. See id. at 2. Had defendants confronted these issues at an earlier stage of the litigation, significant resources of the Court, and of the private attorneys who have represented

plaintiff on a <u>pro</u> <u>bono</u> basis, could have been spared.

Defendants' failure to substantively raise these defenses, which

would have required not more than a <u>de</u> <u>minimis</u> inquiry by

defendants, is of great concern. It suggests to the Court that

defendants either failed to make appropriate inquiries at the

outset of this litigation, or were intentionally delaying

disclosure of the pleading error in an effort to defeat

plaintiff's claims on this non-substantive basis. Either

scenario is unacceptable. Nevertheless, the Court turns to the

merits of defendants' motion.

**II.   <u>SUMMARY JUDGMENT STANDARD</u>**

>   The standards governing summary judgment are well-
>   settled. Summary judgment is appropriate only "if the
>   pleadings, depositions, answers to interrogatories, and
>   admissions on file, together with the affidavits ...
>   show that there is no genuine issue as to any material
>   fact and that the moving party is entitled to a judgment
>   as a matter of law." Fed. R. Civ. P. 56(c)[.]

<u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir.

2002). Summary judgment is proper if, after discovery, the

nonmoving party "has failed to make a sufficient showing on an

essential element of [his] case with respect to which [he] has

the burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

323 (1986) (alterations added).

    "The party seeking summary judgment has the burden to

demonstrate that no genuine issue of material fact exists."

<u>Marvel Characters</u>, 310 F.3d at 286. "In moving for summary

6

judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

## III. **FACTUAL BACKGROUND**

The following facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits, declarations, and exhibits attached thereto.

### A.   The Cutting Incident

Plaintiff is a sentenced inmate who, from June 26, 2012, through May 20, 2016, was housed at Garner. See Doc. #156 at 1, ¶¶1, 3. On April 10, 2015, plaintiff initiated this matter by filing a Verified Complaint. See id. at 1, ¶4; see also Doc. #1.

The Verified Complaint alleges that on October 22, 2013, plaintiff "cut open his arm during a mental health crisis[.]" Doc. #156 at 1, ¶5; see also Doc. #1 at 7, ¶1.

Plaintiff's "DOC Medical/Mental Health clinical record has no entries on October 22, 2013, that involved an act of self-harm." Doc. #156 at 3, ¶11. The only entry from this date stated that plaintiff was doing "better" and "appeared to be in much better spirits and presented as more relaxed and stable." Doc. #156 at 3, ¶12 (citation and quotation marks omitted); see also Doc. #146 at 8.

An Incident Report dated October 3, 2013, however, reveals that an incident on that date "involved an act of self-harm by [plaintiff] cutting open his arm." Doc. #156 at 2, ¶10. Early in the morning on October 3, 2013, plaintiff "was moved out of his cell by custody staff after he lacerated his left forearm." Id. at 3, ¶14. Plaintiff received medical treatment for a "gaping laceration" caused by plaintiff using a "nail clipper" to cut "his left inner arm." Id. at 3, ¶15; see also Doc. #146 at 3. Plaintiff told "medical staff that he had been so stressed out he just wanted to cut" and that he had done so with a nail clipper. Doc. #156 at 3-4, ¶16 (citation and quotation marks omitted); see also Doc. #146 at 2.

Later in the morning on October 3, 2013, plaintiff "was seen for a clinical assessment and medication review in a

8

therapeutic cubical, because" plaintiff had reopened a wound left from a previous cutting incident. Doc. #156 at 4, ¶17 (sic); see also Doc. #146 at 4. Plaintiff was then "moved to a Mental Health Behavior Observation cell and provided with a safety gown, safety blanket, and a bag meal." Doc. #156 at 4, ¶18; see also Doc. #146 at 5. "[S]ubsequent ... Incident Reports on October 4, 2013 through to October 6, 2013, involved continued incidents with [plaintiff] that originated from the October 3, 2013[,] self-injury incident." Doc. #156 at 2-3, ¶10.

B.   DOC Administrative Remedy Procedure

Two different administrative remedy procedures available to DOC inmates are potentially at issue in this matter. Defendants, however, address only the procedures available under Administrative Directive ("A.D.") 9.6. See generally Doc. #148-5, Doc. #148-6, Doc. #148-10. Defendants Semple and Captain Bona are non-medical personnel (Semple and Captain Bona are hereinafter sometimes referred to as the "custodial defendants"); therefore, the claims against them require exhaustion pursuant to A.D. 9.6. See Cruz v. Naqvi, No. 3:21CV00008(SALM), 2022 WL 4225491, at *4 (D. Conn. Sept. 13, 2022).

Defendants CSW Bertulis, Dr. Gebeno, and Dr. Castro are, however, medical personnel (hereinafter sometimes referred to as the "medical defendants"). The claims against them for

deliberate indifference to serious medical needs require exhaustion pursuant to A.D. 8.9. _See_ _id._; _see also_ _Garcia v. Univ. of Conn. Health Care Ctr._, No. 3:16CV00852(JCH), 2018 WL 5830840, at *7 (D. Conn. Nov. 7, 2018) (treating claims against CSW Bertulis as requiring exhaustion pursuant to A.D. 8.9). The Court reviews both provisions below.

1. *Administrative Directive 9.6*

Inmates incarcerated at Connecticut DOC facilities have access to the Inmate Administrative Remedies process outlined in Administrative Directive 9.6 ("A.D. 9.6"). _See generally_ Doc. #148-5.[3]

A.D. 9.6 provides "a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." _Id._ at 2. Plaintiff does not dispute that A.D. 9.6 was in effect at the time of the incidents underlying his Verified Complaint,

---

[3] A.D. 9.6 was revised on April 30, 2021. _See_ State of Connecticut Department of Correction, _Administrative Directive 9.6: Inmate Administrative Remedies_, 3-4 (April 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0906_Effective_04302021.pdf. Plaintiff's Verified Complaint concerns events that occurred in or around October 2013. _See generally_ Doc. #1. Accordingly, all references to A.D. 9.6 in this Ruling refer to the version that was in effect from August 15, 2013, through April 29, 2021, which defendants have attached as Exhibit 5 to their motion. _See_ Doc. #148-5.

nor that he was required to exhaust his administrative remedies

pursuant to A.D. 9.6.

> The type of remedies available to an inmate depends on
> the nature of the issue or condition experienced by the
> inmate or the decision made by correctional personnel.
> For all matters relating to any aspect of a prisoner's
> confinement that are subject to the Commissioner's
> authority and that are not specifically identified in
> subsections (B) through (I) of Administrative Directive
> 9.6(4), the applicable remedy is the Inmate Grievance
> Procedure set forth in 9.6(6).

Gulley v. Bujnicki, No. 3:19CV00903(SRU), 2019 WL 2603536, at *3

(D. Conn. June 25, 2019). Because plaintiff's claims against the

custodial defendants do not relate to any of the specifically

identified matters in subsections (B) through (I) of A.D.

9.6(4), his claims are subject to the Inmate Grievance Procedure

set forth in section 6 of A.D. 9.6. See Doc. #148-5 at 6-10. The

Inmate Grievance Procedure entails several steps.

"An inmate must attempt to seek informal resolution prior

to filing an inmate grievance." Id. at 6. An inmate may attempt

informal resolution "verbally with the appropriate staff member

or with a supervisor/manager. If the verbal option does not

resolve the issue, the inmate shall submit a written request via

CN 9601, Inmate Request Form." Id.

"An inmate may file a grievance if the inmate is not

satisfied with the informal resolution offered." Id. at 7. "The

grievance must be filed within 30 calendar days of the

occurrence or discovery of the cause of the grievance." Id. This

11

grievance must be submitted on a "CN 9602, Inmate Administrative Remedy Form[,]" and the inmate must "attach CN 9601, Inmate Request Form, containing the appropriate staff member's response[.]" Id. "If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached." Id. The inmate must submit the CN 9602 by depositing it "in the Administrative Remedies box." Id. This is commonly known as a "Level 1" grievance. Id. at 8.

A.D. 9.6 provides that each Level 1 grievance "shall be reviewed for compliance with the Inmate Grievance Procedure and investigated if the grievance is accepted." Id. DOC staff must respond "in writing within 30 business days of receipt[.]" Id. An inmate's grievance may be "Rejected, Denied, Compromised, Upheld or Withdrawn." Id. at 7.

"An inmate may appeal a Level 1 disposition to Level 2 within five (5) calendar days of receipt of the decision[,]" or "[i]f a response to a Level 1 grievance is not received within 30 business days[.]" Id. at 8. "A grievance appeal filed by an inmate confined in a Connecticut correctional facility shall be decided by the appropriate District Administrator." Id. Level 2

12

is "the final level of appeal for all grievances except as provided in Section 6(L)" of A.D. 9.6. Id.[4]

The DOC maintains "[a] grievance file ... at each level for each grievance[,]" which "include[s] a copy of the grievance, each response, and any supporting documents submitted in support of the grievance, presented during investigation, or relied upon in the decision." Id. at 9. Additionally, the DOC maintains a "Grievance Log," form CN 9608, which "include[s] the name and number of the grievant, the dates of initial receipt and of the response at that level, a brief description of the problem and the disposition." Id. at 10.

### 2. Administrative Directive 8.9

Inmates incarcerated at Connecticut DOC facilities also have access to the Health Services Review ("HSR") policy outlined in Administrative Directive 8.9 ("A.D. 8.9"). See Doc. #155-4 at 2-6.[5]

_____

[4] In limited circumstances, an inmate may appeal a Level 2 disposition to Level 3. See Doc. #148-5 at 8. Level 3 review is available only if the grievance: "1. challenges Department level policy; 2. challenges the integrity of the grievance procedure; or, 3. Exceeds the established 30 business day time limit for a Level 2 grievance response." Id. (sic). None of these circumstances is applicable here.

[5] A.D. 8.9 was revised on April 30, 2021. See State of Connecticut Department of Correction, Administrative Directive 8.9: Health Services Administrative Remedies, 6-9 (April 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf. Plaintiff's Verified Complaint concerns events that occurred in or around October 2013. See generally Doc. #1. Accordingly, all

A.D. 8.9 establishes an "administrative remedy for all health services to enable an inmate to seek formal review of any health care provision, practice, diagnosis or treatment." Id. at 2.

> There are two types of Health Services Review:
>
> A. Diagnosis and Treatment. A review of a diagnosis or treatment including a decision to provide no treatment, relating to an individual inmate.
> B. Review of an Administrative Issue. A review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider[.]

Id. at 4. Plaintiff here complains that the medical defendants failed to provide mental health treatment or pain medication; his claims therefore fall under "Diagnosis and Treatment." Id.; see also Doc. #7 at 4-5 (IRO construing claims asserted against medical defendants).

An "inmate must attempt to seek an informal resolution prior to filing for a Health Services Review." Doc. #155-4 at 4. An inmate must attempt informal resolution "face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." Id. Prison staff are required to respond to informal resolution requests "within 15 calendar days from receipt of the written request." Id.

_____

references to A.D. 8.9 in this Ruling refer to the version that was in effect from July 24, 2012, through April 29, 2021, which plaintiff has docketed as Exhibit 4 to his memorandum in opposition to the motion for summary judgment. See Doc. #155-4.

"[I]f informal resolution via inmate request was unsuccessful[,]" an inmate seeking review of a diagnosis or treatment "may apply for a Health Services Review" by submitting a "CN 9602 Inmate Administrative Remedy form[.]" Id. On that form, the "inmate shall check the 'Diagnosis/Treatment' box and explain concisely the cause of his/her dissatisfaction, and deposit the completed form in the Health Services Remedies/Review box." Id.

The HSR Coordinator maintains "[a] log of each Health Services Review request and appeal[.]" Id. at 5. The HSR Coordinator also maintains "[a] file of each Health Services Review request and appeal ..., containing copies of the forms that have been used in the review or appeal." Id. For any inmate that "has applied for a Review of a Diagnosis or Treatment[,]" the "health record" of that inmate must "contain a copy of the forms used in the Review, notations in the clinical record including a notation of 'HSR Administrative Remedy' appointment." Id.

C.   Plaintiff's Administrative Remedy History

Correctional Counselor Cody Kingsley ("CC Kingsley") is the "Administrative Remedies Coordinator" at Garner. Doc. #156 at 6, ¶27. CC Kingsley "is the Keeper of Records of inmate administrative remedies, grievances and appeals[.]" Id. at 6, ¶28. CC Kingsley also maintains Garner's "Grievance Log." Id. At

the request of defense counsel, CC Kingsley searched Garner's
"Grievance Log and files from October 1, 2013 to January 1,
2014, to locate all informal resolutions and grievances filed by
[plaintiff] while he was confined at Garner ... and specifically
for the alleged October 22, 2013, incident(s) at that facility."
Id. at 6, ¶31 (sic). "CC Kingsley did not find any informal
resolutions or inmate grievances filed by [plaintiff] for the
October 22, 2013[,] incident(s), or any other incidents up to
January 1, 2014." Id. at 7, ¶33.[6] Other grievances located by CC
Kingsley in his search did not relate to the October 2013
incident. See id. at 7, ¶¶34-35.[7]

Plaintiff attaches to his opposition an Inmate
Administrative Remedy Form dated February 1, 2015. See Doc.

---

[6] Plaintiff objects to this statement because he "does not have
any independent information regarding [CC Kingsley's] search of
the records." Doc. #156 at 7, ¶33. Generally, a responsive
statement of material facts that contains "argument, legal
conclusions, personal belief, and speculation is ...
inappropriate." Martin v. Town of Simsbury, 505 F. Supp. 3d 116,
125 (D. Conn. 2020). This denial "does not comply with Local
Rule 56(a)(3), [and] the Court will deem [it] admitted" because
it is "supported by the evidence in accordance with Local Rule
56(a)(1) for the purposes of resolving this motion." Id.
(citation and quotation marks omitted).

[7] For the reasons stated in footnote 6, supra, the Court deems
paragraph 35 admitted because plaintiff's denial does not comply
with Local Rule 56(a)(3), and paragraph 35 is supported by the
evidence, in accordance with Local Rule 56(a)(1).

#155-2 at 2.[8] In Section 1, plaintiff checked that he was "requesting a Health Services Review." Id. In Section 4, plaintiff wrote:

> I am submitting this grievance concerning the lack of mental health treatment and concerning me being punished for attempting to take my life by comitting suicide on 10-3-13 at or around 2:59<u>AM</u> as a Result of the lack of mental health care as I was experiencing a mental health crisis it resulted in me attempting to slice my left wrist open[.]

Id. at 3 (sic). The authenticity of this document is disputed. See Doc. #156 at 9-10, ¶¶43-45.

Plaintiff asserts in a declaration dated June 24, 2022, that "in October 2013, I tried to informally resolve my mental health treatment issues[,]" and "[w]hen I did not receive a response to my informal request, I submitted a written request in the collection box." Doc. #155-1 at 3, ¶¶12-13. Plaintiff states that he "did not receive a response to" his "informal request," so he "filed a grievance" to which he also did not receive a response. Id. at 3, ¶¶13-16. Plaintiff states that he "completed the administrative steps to resolve my medical and mental health treatment issues by filing a request and then a grievance. I followed the procedures to exhaust my administrative remedies." Id. at 3, ¶¶17-18.

---

[8] Attached to this form is an Inmate Request Form, CN 9601, dated January 4, 2015. See Doc. #155-2 at 4.

IV.   **DISCUSSION**

Defendants move for summary judgment on two grounds. First, defendants assert that plaintiff's "claims fail to state a claim upon which relief can be granted, because the alleged October 22, 2013, date of the incident is incorrect." Doc. #148 at 1. Second, defendants assert that plaintiff has failed to exhaust his administrative remedies. See id. at 2. The Court first addresses the question of whether plaintiff has exhausted his administrative remedies.

A.    Exhaustion of Administrative Remedies

1. *Applicable Law*

The Prisoner Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" Porter v. Nussle, 534 U.S. 516, 532 (2002).

"The Supreme Court has held that 'the PLRA exhaustion requirement requires proper exhaustion.' That is, 'prisoners must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined

not by the PLRA, but by the prison grievance process itself.'" Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006); and then quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). "The PLRA's exhaustion requirement is designed to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91 (footnote omitted); see also Williams v. Comstock, 425 F.3d 175, 177 (2d Cir. 2005) ("[T]he failure to timely file the grievance in accordance with IGP rules amounted to a failure to exhaust administrative remedies in this case.").

Exhaustion of administrative remedies is an affirmative defense. See Jones, 549 U.S. at 216. "[D]efendants bear the burden of proving that the plaintiff did not exhaust his administrative remedies[.]" Guarneri v. West, 782 F. Supp. 2d 51, 59 (W.D.N.Y. 2011) (citation and quotation marks omitted), aff'd, 495 F. App'x 142 (2d Cir. 2012).

2. *A.D. 8.9*

Defendants do not address the applicability of A.D. 8.9 to plaintiff's claims against the medical defendants. Defendants' exhaustion argument is limited to the claim that A.D. 9.6 "sets forth the required processes an inmate must follow to complain about any aspect of the inmate's confinement and/or health services, prior to filing legal action alleging that the grieved condition(s) and staff person(s) violated their constitutional rights." Doc. #148-11 at 4, ¶20. Inexplicably, despite the law distinguishing the applicability of A.D. 8.9 and A.D. 9.6, and defense counsel's expertise in this area, defendants conflate the exhaustion requirements under A.D. 8.9 and A.D. 9.6. Although plaintiff agrees with defendants' statement on the applicability of A.D. 9.6, see Doc. #156 at 4, ¶20, he has attached a copy of A.D. 8.9 to his opposition, see Doc. #155-4.

Regardless, as to plaintiff's claims against the medical defendants alleging failure to provide mental health treatment, plaintiff was required to exhaust the administrative remedies available to him under A.D. 8.9; as to plaintiff's claims against defendants Semple and Bona, he was required to exhaust the administrative remedies available to him under A.D. 9.6. See Carter v. Revine, No. 3:14CV01553(VLB), 2017 WL 2111594, at *14 (D. Conn. May 15, 2017) ("Directive 8.9 applies to [plaintiff's] claims against medical staff. Directive 8.9 provides formal

20

review of any health care provision, practice, diagnosis or treatment, whereas Directive 9.6 more generally applies to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" (citations and quotation marks omitted)); <u>Urbanski v. Dep't of Corr.</u>, No. 3:18CV01323(VLB), 2019 WL 6683047, at *2-3 (D. Conn. Dec. 5, 2019) (distinguishing between A.D. 8.9 and A.D. 9.6).

The evidence of record establishes that CC Kingsley searched the Garner grievance log, and that no grievances were located related to the subject incident for the time period of October 1, 2013, through January 1, 2014. <u>See</u> Doc. #156 at 6-7, ¶¶31-33. Pursuant to A.D. 8.9, there is a HSR coordinator who maintains "[a] log of each Health Services Review request and appeal[.]" Doc. #155-4 at 5. Defendants present no evidence, however, that a search of the Garner Health Services Review log was undertaken.[9]

---

[9] Defendants contend that plaintiff's January 4, 2015, Inmate Administrative Request and February 1, 2015, Inmate Remedy Forms "are a recent fabrication designed to defeat the defendant's failure to exhaust claim[]" because "there is no record of the February 1, 2015, grievance in the Garner ... Grievance Logs." Doc. #148-10 at 12 (sic). Notably, on the February 1, 2015, Inmate Administrative Remedy Form, plaintiff checked that he was "requesting a Health Services Review[,]" and not that he was "filing a Grievance." Doc. #155-2 at 2 (sic). Indeed, plaintiff specifically alleges in the Complaint that he "filed a Health Service Review[.]" Doc. #1 at 7, ¶7. It is therefore not surprising that this Health Services Review form was not located in Kingsley's search of Garner's <u>grievance</u> log.

"If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citation and quotation marks omitted) (emphases omitted). Here, as to the medical defendants, defendants have failed to meet their burden of demonstrating "that there is no genuine issue of material fact and [their] entitlement to judgment as a matter of law[]" on the issue of exhaustion, because there is no evidence relating to the contents of Garner's Health Services Review Log. Id.; cf. Durham v. Hanna, No. 3:19CV00190(KAD), 2020 WL 4586688, at *6 (D. Conn. Aug. 10, 2020) (The defendants "met their initial burden of establishing that Durham failed to exhaust his administrative remedies [pursuant to A.D. 8.9] and they are entitled to judgment as a matter of law[,]" where "RN Sullivan averred that she did not locate any Health Services Reviews or 'medical grievances'" for the relevant time period.).

Accordingly, defendants' motion for summary judgment on this issue of exhaustion as to the medical defendants is **DENIED**.

     3. *A.D. 9.6*

There is no dispute that plaintiff was required to exhaust his administrative remedies pursuant to A.D. 9.6 with respect to his claims against the custodial defendants, Semple and Captain

Bona. See Doc. #156 at 4-5, ¶¶20-21. Plaintiff presents no evidence that he exhausted these claims in accordance with A.D. 9.6. To the contrary, plaintiff's evidence supports an inference that he attempted to comply with A.D. 8.9. See, e.g., Doc. #155-1 at 3, ¶17 ("I completed the administrative steps to resolve my medical and mental health treatment issues[.]"); Doc. #155-2 (request for Health Services Review dated February 1, 2015); Doc. #1 at 7, ¶7 (Verified Complaint alleging that plaintiff "filed a Health Service Review").

Defendants have provided evidence that plaintiff did not exhaust his remedies pursuant to A.D. 9.6. Relevant to this issue, defendants assert the following material facts:

> 31. At the request of the Office of the Attorney General, as the Administrative Remedies Coordinator at GCI, CC. Kingsley searched the GCI Grievance Log, and files, from October 1, 2013, to January 1, 2014, to locate all informal resolutions and grievances filed by Mr. Taveras while he was confined at Garner C.I., and specifically for the alleged October 22, 2013, incident(s) at that facility. Exhibit 6, ¶15.
>
> ...
>
> 33. Upon his review of those records, CC. Kingsley did not find any informal resolutions or inmate grievances filed by Mr. Taveras for the October 22, 2013, incident(s), or any other incidents up to January 1, 2014. Exhibit 6, ¶16.
>
> 34.  He then continued his review of the Garner C.I. Grievance Log until he located a grievance that Taveras filed, which was a Level One Grievance he filed on April 10, 2014, but it did not involve the October 22, 2013, incident(s), and it was denied by a unit manager on April 29, 2014. Exhibit 6, ¶17; Exhibit 7.

> 35.  The next entry CC. Kingsley located that Mr. Taveras
> filed was dated June 14, 2014, and it was rejected. With
> further searching, CC. Kingsley located two more
> entries, both of which were filed in 2016. Exhibit 6,
> ¶18; Exhibit 7.

Doc. #148-11 at 6, ¶¶31, 33-35 (footnote omitted).[10] These facts

are based on CC Kingsley's sworn declaration. See Doc. #148-6.

Accordingly, defendants Semple and Captain Bona have provided

undisputed evidence establishing that plaintiff failed to

exhaust his administrative remedies pursuant to A.D. 9.6.

The Court's inquiry, however, does not end there. With no

citation to any authority, plaintiff appears to assert that his

failure to comply with A.D. 9.6 should be excused because

defendants' failure to respond to his alleged informal request

and grievance "renders the system unavailable." Doc. #155 at 5.

> Prisoners need not comply with the exhaustion
> requirement[] ... when administrative remedies are
> unavailable. An administrative procedure will be treated
> as unavailable for purposes of this exemption in at least
> three circumstances: (1) when it operates as a simple
> dead end — with officers unable or consistently
> unwilling to provide any relief to aggrieved inmates;
> (2) when it is so opaque that it becomes, practically
> speaking, incapable of use; or (3) when prison
> administrators thwart inmates from taking advantage of
> a grievance process through machination,
> misrepresentation, or intimidation.

---

[10] Paragraphs 31 and 34 are admitted. See Doc. #156 at 6-7. For
reasons previously stated, paragraphs 33 and 35 have been deemed
admitted. See notes 6-7, supra.

Taylor v. New York City Dep't of Corr., 849 F. App'x 5, 8 (2d
Cir. 2021) (citations and quotation marks omitted). The Second
Circuit has held that "administrative remedies were either
exhausted or 'unavailable' when" state prison officials did not
respond to a properly submitted grievance or appeal within the
time provided by their own "mandatory deadlines[.]" Hayes v.
Dahlke, 976 F.3d 259, 270-71 (2d Cir. 2020).

"The prison officials' failure to respond to" plaintiff's
purported informal request and grievance "did not render the ...
administrative procedure unavailable[]" in this case, however,
because A.D. 9.6 "contemplates that prison officials might not
always respond to inmates' grievances. It sets forth the
procedure to follow in such circumstances." Taylor, 849 F. App'x
at 8. For example, although the inmate grievance procedure
provides that a response to CN 9601, the Inmate Request Form
"shall be made within 15 business days from receipt of the
written request[,]" Doc. #148-5 at 6, the procedure explicitly
contemplates that a response may not be received:

> An inmate may file a grievance if the inmate is not
> satisfied with the informal resolution offered. The
> inmate shall attach CN 9601, Inmate Request Form,
> containing the appropriate staff member's response, to
> the CN 9602, Inmate Administrative Remedy Form. If the
> inmate was unable to obtain a blank CN 9601, Inmate
> Remedy Form, **or did not receive a timely response to the
> inmate request,** or for a similar valid reason, the inmate
> shall include an explanation indicating why CN 9601,
> Inmate Request Form is not attached.

Id. at 7 (emphases added).

Similarly, A.D. 9.6 provides that DOC staff must respond to a Level 1 grievance "in writing within 30 business days of receipt[.]" Id. at 8. However, A.D. 9.6 again explicitly contemplates that a response to the Level 1 grievance may not be received: "If a response to a Level 1 grievance is not received within 30 business days, an inmate may appeal to Level 2." Id. "The administrative exhaustion process is not unavailable for purposes of the PLRA when an inmate simply chooses not to avail himself of it." Taylor, 849 F. App'x at 8. Accordingly, the administrative remedies under A.D. 9.6 were not unavailable to plaintiff merely "because prison officials did not respond to his" informal request and grievance. Id.

The record establishes that plaintiff "failed to properly exhaust the administrative remedies available to him before filing suit in federal court[]" as to any of his claims against the custodial defendants. Wilson v. McKenna, 661 F. App'x 750, 753 (2d Cir. 2016). The PLRA requires exhaustion. Failure to exhaust available administrative remedies entitles defendants Semple and Captain Bona to summary judgment. See McKinney v. Prack, 170 F. Supp. 3d 510, 518 (W.D.N.Y. 2016) (granting summary judgment in favor of defendants on plaintiff's 42 U.S.C. §1983 claims where plaintiff failed to exhaust his administrative remedies under the PLRA). Accordingly, defendants

26

Semple and Captain Bona's motion for summary judgment on the
grounds of exhaustion is **GRANTED**.

    B.  <u>Failure to State a Claim</u>

    Defendants contend that "plaintiff cannot demonstrate a
constitutional violation occurred on October 22, 2013, as he
alleged in his Verified Complaint, because no incident involving
him, and the defendants, occurred on that date." Doc. #148-10 at
5.[11] Thus, defendants assert that "[b]y inaccurately pleading the
date of the incident, the plaintiff's allegations against each
of the defendants are also inaccurate, as none of the defendants
did what he alleged they did, or didn't do on October 22,
2013[.]" <u>Id.</u> at 6.[12] Plaintiff asserts that defendants have
"conceded that a cutting incident" occurred on October 3, 2013,
and "[t]he alleged error in the date of the incident does not
change the basis of the constitutional violations." Doc. #155 at
3-4.

---

[11] Because the exhaustion defense is dispositive of the claims
against defendants Semple and Captain Bona, the Court considers
this argument only as to the medical defendants.

[12] Defendants assert that "none of the named defendants were
involved in the October 3, 2013, incident." Doc. #148 at 2.
Attached to plaintiff's opposition, however, is a Mental Health
Disciplinary Review Form, CN 9510, dated October 3, 2013, that
is signed by CSW Bertulis. <u>See</u> Doc. #155-3 at 26. There is also
an Incident Report Routing Sheet regarding the October 3, 2013,
incident that references Captain Bona and directives for him to
"discuss" and "follow-up" on certain matters. <u>Id.</u> at 28. The
Court notes this only to highlight the apparent inaccuracy of
defendants' representation.

"It is well settled in this Circuit that personal
involvement of defendants in alleged constitutional deprivations
is a prerequisite to an award of damages under §1983[.]" Komondy
v. Gioco, 253 F. Supp. 3d 430, 456 (D. Conn. 2017) (citation and
quotation marks omitted). Thus, "a plaintiff must plead that
each Government-official defendant, through the official's own
individual actions, has violated the Constitution." Ashcroft v.
Iqbal, 556 U.S. 662, 676 (2009).

The undisputed material facts establish that at the request
of defense counsel, Janette Santiago, a DOC Litigation and
Freedom of Information liaison, conducted a "search of the
record database at Garner ... to locate the Incident Report ...
involving [plaintiff's] October 22, 2013, allegation in his
Verified Complaint, but she did not find one." Doc. #156 at 2,
¶7. Upon broadening her search for the entire month of October
2013, Ms. Santiago "located four Incident Reports, dated
consecutively from October 3, 2013 to October 6, 2013." Id. at
2, ¶9 (sic). Among those four reports was one dated October 3,
2013, that "involved an act of self-harm by [plaintiff] cutting
open his arm." Id. at 2, ¶10. Three subsequent Incident Reports
dated October 4, 2013, through October 6, 2013, involved
incidents stemming from plaintiff's October 3, 2013, cutting
incident. See id. at 2-3, ¶10. In sum, plaintiff's "DOC
Medical/Mental Health clinical record has no entries on October

28

22, 2013, that involved an act of self-harm." Id. at 3, ¶11.
These facts are based on Ms. Santiago's sworn declaration. See
Doc. #148-3.

The Court begins with the claim against Dr. Castro. The
Verified Complaint alleges: "After numerous suicide attempts by
cutting, the Medical Doctor, Mr. Castro refused to give me
prescribe medication for pain from emergency room doctors." Doc.
#1 at 7, ¶7 (sic). These allegations, which the IRO permitted to
proceed, are not tied to a specific date. See Doc. #7 at 5-6
(IRO). Indeed, the Verified Complaint explicitly alleges: "I cut
open my arm many different times and had to go to the outside
hospital many times also." Doc. #1 at 7, ¶8. Thus, the fact that
plaintiff pled the wrong date of his October 2013 cutting is not
dispositive of Dr. Castro's personal involvement in the alleged
constitutional violation. Accordingly, the motion for summary
judgment as to Dr. Castro is **DENIED.**

Similarly, the pleading error is not dispositive of Dr.
Gebeno and CSW Bertulis's personal involvement in the alleged
constitutional violation. The Verified Complaint alleges:
"Doctor Gebeno and CSW Nancy B. pushed aside my right to
treatment and stated my actions regarding my suicide attempts by
cutting was behavioral and that I belonged in (R.H.U.) and at no
time was there talk of intervention or treatment." Id. at 7, ¶5
(sic). Indeed, plaintiff alleges that as a result of the October

2013 incident "and many others like it I was placed in the
facility Restrictive Housing Unit (R.H.U.) and denied meaningful
Medical and Mental Health Treatment." Id. at 7, ¶1 (sic). The
IRO construed these allegations as claiming that plaintiff "was
also seen by Dr. Gebeno and 'CSW' [Bertulis], who he alleges
determined that his suicide attempts were 'behavioral' and did
not require treatment. Though the Complaint does not
specifically allege that he conveyed his suicidal thoughts to
Dr. Gebeno and 'CSW' [Bertulis], he does allege that he met with
these professionals during the relevant time period and that
they failed to provide him with treatment." Doc. #7 at 4
(quoting Doc. #1 at ¶5) (emphases added). Accordingly, like Dr.
Castro, plaintiff's claims against Dr. Gebeno and CSW Bertulis
are not specifically tied to the October 22, 2013, date. Thus,
the incorrect date is not dispositive of the personal
involvement of Dr. Gebeno and CSW Bertulis. The motion for
summary judgment as to Gebeno and CSW Bertulis is therefore
**DENIED.**

Finally, defendants insist that plaintiff "is precluded
from curing [the pleading defect] with a motion to amend his
complaint with a new or 'correct' claim at this late stage of
the proceedings[.]" Doc. #148-10 at 8 (citing cases). Although
plaintiff does not explicitly seek to amend his Verified
Complaint to correct the identified pleading defect, he suggests

30

that he should be allowed to do so because his "claim is supported by the record and the defendants' admission that the cutting incident did occur in the Garner facility." Doc. #155 at 4.

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d Cir. 2021), cert. denied, 142 S. Ct. 1112 (2022). As relevant here, the Court applies the "liberal and permissive standard[]" of Rule 15(a)(2) and will deny leave to amend only "upon a showing of undue delay, bad faith, dilatory motive, or futility." Id. (quotation marks and footnote omitted); accord Alfonso v. FedEx Ground Package Sys., Inc., No. 3:21CV01644(SVN), 2022 WL 4545888, at *5 (D. Conn. Sept. 29, 2022).[13] "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Second Circuit "has permitted a party to amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the

---

[13] The more stringent "good cause" standard under Rule 16 is not applicable because the Amended Scheduling Order did not set "a date after which no amendment will be permitted." Sacerdote, 9 F.4th at 115; see also Doc. #44 (Amended Scheduling Order).

amendment existed at the time of the original complaint." <u>Miller</u> <u>v. Selsky</u>, 234 F.3d 1262 (2d Cir. 2000) (unpublished table decision); <u>accord</u> <u>Haddock v. Nationwide Fin. Servs. Inc.</u>, 514 F. Supp. 2d 267, 271 (D. Conn. 2007). This is particularly so where the proposed amendment does "not raise wholly new claims." <u>Miller</u>, 234 F.3d at 1262.

To the extent plaintiff seeks to amend the Verified Complaint to correct the date of the cutting incident, the Court will allow the amendment. This amendment would not add any new claims to the Verified Complaint, but rather is a "mere[] variation[] on the original theme" of the Verified Complaint against the remaining medical defendants. <u>Id.</u> (citation and quotation marks omitted). Although defendants argue that an amendment should not be allowed at this late stage, defendants bear at least some of the fault for this defect having been raised at such a late stage of the proceedings.[14] Nevertheless, defendants point to no "bad faith or dilatory motive on the part

_____

[14] The late assertion of this defense is of deep concern. To provide an Answer to the Complaint and discovery responses, each defendant would have been required to review the allegations of the Complaint and make an appropriate inquiry. Had this been done, the correct incident date would have been known to defendants in 2015. Defendants take pains to assert that this defense may be raised at any time and it is not their "burden to identify pleading flaws in a plaintiff's complaint." Doc. #148-10 at 5-6. It is unclear whether defendants did not make appropriate inquiries at earlier stages of this case, or were intentionally trying to ensnare the self-represented plaintiff in his error.

of [plaintiff], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice ... by virtue of allowance of the amendment, [or] futility of amendment[,]" that would justify denying a request to amend for the limited purpose of correcting the incident date. Haddock, 514 F. Supp. 2d at 270 (citations and quotation marks omitted). Indeed, "[d]elay alone unaccompanied by such a declared reason[] ... does not usually warrant denial of leave to amend." Id. at 270 (citation and quotation marks omitted). The Court will not, however, permit plaintiff to amend the Verified Complaint to add any new defendants or claims.

Thus, on or before **February 6, 2023,** plaintiff shall file an Amended Complaint, which removes Semple and Bona as defendants to reflect the granting of summary judgment in their favor, and corrects the October 2013 incident date to October 3, 2013. No other amendments may be made.

## V.   CONCLUSION

Accordingly, and for the reasons set forth herein, defendants' Motion for Summary Judgment [**Doc. #148**] is **GRANTED, in part, and DENIED, in part.**

Judgment shall enter in favor of defendants Semple and Bona.

It is so ordered this 5th day of January, 2023, at Bridgeport, Connecticut.

```
_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES CIRCUIT JUDGE
Sitting by Designation
```